**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DONALD R. ASHLEY                                                       PLAINTIFF

V.                           NO. 2:10CV00190-JTR

MICHAEL J. ASTRUE,                                       DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Donald R. Ashley, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both parties have filed Appeal Briefs (docket entries #12, #16), and the issues are now joined and ready for disposition.

The Commissioner's denial of benefits must be upheld upon judicial review if the decision is supported by substantial evidence in the record as a whole. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Moore*, 623 F.3d at 602.

On November 24, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset date of December 1, 2007. (Tr. 81-92.) He reported that he was unable to work due to emphysema, chronic obstructive pulmonary disease, and neck and spine problems. (Tr. 100.) He was fifty-six years old at the time of alleged onset of disability, had an eighth or ninth grade education, and had past work as a self-employed carpenter and as a truck-driver. (Tr. 26-27, 95, 101, 106, 118.)

After Plaintiff's claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge (ALJ). On November 9, 2009, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 22-39.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If not, benefits are

denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling. *Id.* §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.* §§ 404.1520(a)(4)(iv) & (f), 416.920(a)(4)(iv) & (f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his June 4, 2010 decision (Tr. 8-18), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since December 1, 2007, his alleged onset date; (2) had "severe" impairments consisting of chronic obstructive pulmonary disease (COPD) and degenerative joint disease in his cervical and lumbar spine; (3) did not have an impairment or combination of impairments that met or equaled a listed

impairment; (4) had the RFC for the full range of sedentary work;[1] (5) was not credible regarding the intensity, persistence and limiting effects of his symptoms; and (6) was unable to perform his past relevant work; but (7) considering his age, education, work experience, RFC and transferable work skills, and based on the testimony of the vocational expert, he was able to perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ concluded that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-3.) Plaintiff then appealed the denial of benefits to this Court (docket entry #2).

## II. Analysis

Plaintiff makes overlapping arguments that the ALJ erred: (1) in failing to find that Plaintiff's impairments met the requirements of a listing at step three of the sequential evaluation (Pl.'s Br. at 9-12); (2) in discrediting Plaintiff's subjective complaints regarding his exertional abilities and the intensity and severity of his symptoms (*id.* at 13-15, 18-19); and (3) in failing to properly consider his non-

---

[1] *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work).

exertional impairments at step five of the sequential evaluation (*id.* at 15-21). For the reasons discussed below, the Court concludes that Plaintiff's first argument is meritorious, necessitating reversal and remand.[2]

If a severe impairment meets both a listing and the twelve-month durational requirement, the claimant is conclusively presumed to be disabled. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). If the claimant meets the criteria of a listed impairment, no further proof is needed to establish disability. *Johnson v. Astrue*, 628 F.3d 991, 993 (8th Cir. 2011).

Here, the ALJ concluded that Plaintiff did not have "an impairment or combination of impairments" that met or medically equaled the criteria of any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 11.) Specifically, he found that: (1) "no evidence [showed] the existence of any physical impairment(s) that meets the criteria of 1.04 [disorders of the spine], 3.02 [chronic pulmonary insufficiency], or any other of the listed impairments described" in the regulations; and (2) "no treating or examining physician [had] mentioned findings equivalent in severity to the criteria of a listed impairment."[3] The ALJ then relied on the opinion

---

[2]Under these circumstances, the Court need not address Plaintiff's other arguments for reversal.

[3]To the contrary, a pulmonary function study, administered on December 12, 2008, revealed that Plaintiff's COPD caused "mild obstruction" and "severe restriction" of his airways and met the criteria for a listing under 3.02A. Dr. Sudhir Kumar, a consulting

of a reviewing physician to support his conclusion that Plaintiff did not meet the listing for chronic pulmonary insufficiency contained in Listing 3.02. (Tr. 11.)

Plaintiff argues that this finding is not supported by substantial evidence and that, due to his diagnosis of COPD and other respiratory conditions, he "clearly meets the listing for a compensable impairment of the respiratory system." He quotes portions of the regulations generally addressing respiratory impairments (Listing 3.00) and the specific category of chronic pulmonary insufficiency (Listing 3.02A).

Under Listing 3.02A, a person of Plaintiff's height[4] is conclusively disabled if he has COPD due to any cause, and pulmonary function tests indicate a one-second forced expiratory volume (FEV-1) equal to or less than 1.55. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E, § 3.02A & Table I.

---

physician, relied on those test results to support his conclusion that "Patient's physical abilities [are] limited due to COPD." (Tr. 158.) The ALJ failed to follow up with Dr. Kumar to ask him to clarify the nature and extent of Plaintiff's physical limitations. To the extent the underlying pulmonary function study revealed that Plaintiff met a listing and Dr. Kumar relied on those test results to support his diagnosis of "COPD," it certainly seems he found Plaintiff's physical limitations, due to COPD, also met the criteria for a listing under 3.02A. Given the importance of Dr. Kumar's opinion on the physical limitations associated with Plaintiff's COPD, the ALJ was required either to seek clarification from Dr. Kumar, or to explain in his decision why he was rejecting the December 12, 2008 pulmonary function study and Dr. Kumar's opinion (which seemingly supports Plaintiff's meeting the listing criteria in 3.02A) and, instead, was relying on the opinion of a reviewing physician to support his conclusion that Plaintiff was not disabled.

[4]The medical records report Plaintiff's height to be 69 inches (Tr. 168-69) or 70 inches (Tr. 155, 162-63), and his weight to be 136 pounds (Tr. 168-69) or 137 pounds (155, 162-63).

The December 12, 2008 pulmonary function study revealed that Plaintiff's FEV-1 values were .90 and .57 before bronchodilator administration, and .23 and .41 post-bronchodilator. (Tr. 160-63.) Those results easily satisfied the criteria for a listing under Listing 3.02A. That study was performed as part of an agency-ordered general consultative physical examination by Dr. Kumar. (Tr. 152-59.) The technician administering the test stated that Plaintiff's "understanding/cooperation and effort" were "good," and that he "understood and followed instruction." (Tr. 160.) The report notes "mild obstruction" and "severe restriction," with "no improvement in flow" post-bronchodilator. (Tr. 163.)

In Dr. Kumar's consultative report, also dated December 12, 2008, he noted Plaintiff's complaints of shortness of breath for the past eight years and difficulty breathing upon exertion. (Tr. 154.) After examining Plaintiff, Dr. Kumar observed increased AP diameter of the lungs, hyper-resonance and prolonged expiration, but no wheezing. (Tr. 156.) He ordered a chest x-ray, which showed "mild emphysematous changes in the upper lobe" and a flattened diaphragm. (Tr. 164.) In his report, he specifically referred to the pulmonary function test, diagnosed Plaintiff with COPD, and expressed the opinion that Plaintiff's physical abilities were "limited due to COPD." (Tr. 158.)

The Commissioner does not dispute that Plaintiff has been diagnosed with

COPD or that the December 2008 readings meet the FEV-1 criteria set forth in Listing 3.02A. Instead, he argues that the ALJ properly relied on the readings from a pulmonary function study performed six weeks later, on January 21, 2009. This study showed FEV-1 readings that were above Listing 3.02A's criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E (requiring that the highest value, "whether from the same or different tracings," be used when assessing the severity of a respiratory impairment). Specifically, the FEV-1 values were as follows: 1.44, 1.30 and 1.55 pre-bronchodilator, and 1.85, 1.80 and 1.70 post-bronchodilator. (Tr. 166-69.)

It appears the technician who administered the second study doubted the accuracy of his FEV-1 values, because he took it upon himself to compare them with the much lower values reported by the technician who performed the December 12, 2008 study. In an attempt to explain this discrepancy, the second technician made the self-serving and utterly speculative observation that the difference in values between the two studies was the result of "maybe poor initial effort; [now] markedly improved." (Tr. 169.)

The ALJ uncritically accepted the second technician's FEV-1 values, over those of the first study, and even cited the second technician's *guess* that Plaintiff "maybe" gave poor initial effort in the first study. It was this highly questionable data that the ALJ relied on to support his step-three determination. (Tr. 13.) The Court concludes

that this step-three determination clearly is not supported by substantial evidence.

First, the ALJ incorrectly stated that no treating or examining physician had mentioned listing-level findings. (Tr. 11.) As discussed, Dr. Kumar examined Plaintiff, diagnosed him with COPD, and reviewed and referenced the December 2008 pulmonary function study results, which were well below Listing 3.02A's requirements. (Tr. 158.)

Second, the existing medical records contain conflicting evidence which the ALJ failed to address in his decision. The circumstances under which the January 2009 repeat study was ordered are unclear. On December 12, 2008, the first pulmonary function study was performed. The technician who performed this study noted that Plaintiff gave "good" effort and "followed instruction." (Tr. 160.) Dr. Kumar examined Plaintiff, reviewed the test results, and diagnosed Plaintiff with COPD, in large part based on those test results.

On January 21, 2009, the second pulmonary function study was performed. On January 27, 2009, Ronald Crow, a D.O. and reviewing physician, looked at Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment form. (Tr. 170-77.) The form contains the following comment:

> Review of PFT's done [12/12/08] indicate considerable variation, suggesting inconsistent effort on the part of the claimant. Repeat PFT's were ordered with the same vendor, after admonishing claimant that a poor effort could [a]ffect the outcome of the case. Repeat FEV1 values

>are significantly improved.  Although GPCE MD [Dr. Kumar] does not quantitate limitations due to COPD in his MSS [Medical Source Statement], the repeat PFT's might change the MSS initially given by GPCE MD.

(Tr. 176.)

Nothing in the December 12, 2008 pulmonary function study, or in Dr. Kumar's consultative report, questioned the results which supported Plaintiff's meeting a listing under 3.02A.  Further, the study *explicitly states* that Plaintiff gave "good" effort during the tests and "understood and followed instruction."  (Tr. 160)

Nowhere in the record is there *any medical evidence* regarding who ordered the repeat tests or who allegedly "admonished" Plaintiff that a poor effort could affect the outcome of his case.  As neither Dr. Kumar nor the person who administered the first pulmonary function study expressed any concerns about the validity of the test results and the study explicitly cited Plaintiff's *"good" effort*, they clearly would *not* have requested another pulmonary function study.

The *only suggestion* of Plaintiff's giving poor effort in the first study appeared in the *second* study, which was administered by a different person.  The notation "maybe poor initial effort" clearly was made by the technician administering the second study, not Dr. Kumar.  On its face, this self-serving remark (which begins with the word "*maybe*") is nothing more than a guess by the technician who administered the test.  "Maybe" the different results are explained by a testing error committed by

the second technician, or "maybe" the equipment was not properly calibrated.  One thing is clear, however: The idle speculation of a technician administering a pulmonary function test does *not* constitute medical evidence.

Finally, the Court finds the reviewing physician's comment to be troubling. Simply put, there is *nothing* in the medical record to support the reviewing D.O.'s prejudicial statement that some unnamed person allegedly "admonished" Plaintiff that giving a "poor effort could [a]ffect the outcome of the case."  (Tr. 176.)  The Court finds this gratuitous and unsupported comment by the reviewing D.O. to be all the more puzzling in light of the explicit statement by the technician who administered the first study that Plaintiff gave *"good" effort*.

In addition, the reviewing D.O. goes on to engage in still more speculation by stating that Dr. Kumar's opinion "might" be changed by the results of the second study.  Dr. Kumar was never asked whether the January 2009 pulmonary function tests would change his opinion that Plaintiff's COPD limited his physical abilities to the extent that he met a listing under 3.02A.

Neither Dr. Kumar nor any other examining or treating physician was asked to explain the discrepancy between the December and January test results.  As the Commissioner's regulations recognize, impairments caused by chronic disorders of the respiratory system "generally produce *irreversible loss of pulmonary function* due

11

to ventilatory impairments, gas exchange abnormalities, or a combination of both." Listing § 3.00A. At a minimum, the possibility of such a marked improvement in Plaintiff's pulmonary function, in only six weeks, warranted further development of the medical record, including clarification by Dr. Kumar or another specialist in pulmonology.[5]

The ALJ bears a responsibility to develop the record fairly and fully in a social security disability case, independent of the claimant's burden to press his case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ is required to seek clarifying statements from a medical source if "a crucial issue is undeveloped" and the sources' records do not provide an adequate basis for determining the merits of the disability claim. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010).[6] Moreover, the ALJ is required to order medical examinations and tests "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.*

---

[5] The Court notes that handwritten notations, which are partially illegible, appear on both the December and January test reports. (Tr. 163, 168.) While it appears these notations were made by Dr. Kumar, neither he nor any other examining physician was asked to explain the significant variations in the two pulmonary function studies.

[6] *See* 20 C.F.R. §§ 404.1512(e) & 416.912(e) (medical sources should be recontacted when sources's report "contains a conflict or ambiguity that must be resolved, ... does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); §§ 404.1519a(b) & 416.919a(b) (situations requiring consultative examinations).

Faced with starkly conflicting pulmonary function studies – one of which establishes Plaintiff was conclusively disabled – the ALJ was under an obligation to develop the record further by seeking clarification from Dr. Kumar or a pulmonary specialist, and ordering a third pulmonary function study.  A more recent pulmonary study also would aid in determining whether step-three's twelve-month durational requirement has been met.

### III. Conclusion

The Court concludes that the record in this case fails to contain substantial evidence to support the ALJ's step-three determination that Plaintiff does not meet the criteria of a listed impairment.  On remand, the ALJ should fully develop and update the record, and have Dr. Kumar perform another consultative evaluation, along with another pulmonary function study.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is **reversed** and this matter is **remanded** to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED THIS 27th DAY OF March, 2012.

                                    */s/ J. Thomas Ray*
                               UNITED STATES MAGISTRATE JUDGE